# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON UPSHAW and RANDY FOWLER, § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> ERATH COUNTY, TEXAS; SHERIFF § <br> MATT COATES, in his Individual and § <br> Official Capacity; and DEE STEPHENS, § <br> HERBERT BROWN, JOE BROWN, and § <br> SCOTT JACKSON, as County § <br> Commissioners, in their Official Capacities, § <br> Defendants. § | | CASE NO. 3:17-CV-1758-S |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants Erath County, Texas, Sheriff Matt Coates ("Coates"), Dee Stephens, Herbert Brown, Joe Brown, and Scott Jackson's (collectively, "Defendants") Motion to Dismiss [ECF No. 28]. For the following reasons, the Court grants the Motion in part and denies the Motion in part.

### I. BACKGROUND

Plaintiffs Jason Upshaw and Randy Fowler ("Plaintiffs") are former employees of Erath County. Am. Compl. ¶¶ 12-13. Upshaw served as the Chief Deputy Sheriff of Erath County, and Fowler served as the Captain of Erath County. *Id.* At the time of Plaintiffs' allegations, Coates was employed by the Erath County District Attorney. *Id.* ¶ 14. Plaintiffs allege that they were suspended without pay and subsequently terminated as "retribution" for complaining about Coates to the Erath County District Attorney ("DA"). *See id.* ¶¶ 18, 21-22, 24.

Plaintiffs allege that Coates "would frequently visit the Erath County Sheriff's office where Coates would harass and make grossly inappropriate sexually-related remarks to the female

employees." *Id.* ¶ 14. According to Plaintiffs, they were both "sensitive to and protective of the reputation of the Erath County Sheriff's office, which previously been subject to a scandal involving sexual harassment and inappropriate behavior." *Id.* ¶ 15. Upshaw and Fowler state that they were "dedicated to reporting any sexual harassment they witnessed" and "sought to maintain a professional working environment at the Erath County Sheriff's office." *Id.* Upshaw complained about Coates's behavior to the DA, and Fowler expressed his support. *Id.* ¶ 18.

On or about December 20, 2016, shortly after the former Erath County Sheriff's death by suicide, Coates was appointed interim Sheriff. *See id.* ¶¶ 20-21. Plaintiffs allege that within an hour after being sworn in as the new Sheriff, Coates suspended Upshaw and Fowler without pay because they were allegedly "under investigation." *Id.* ¶ 22. Plaintiffs claim that when they asked Coates why they were under investigation, Coates did not tell them. *Id.* According to Plaintiffs, they were escorted out of the Sheriff's office in "a hostile and humiliating manner, creating an impression of wrongdoing." *Id.* ¶ 23.

On or about December 20, 2016, Plaintiffs were terminated, and each was given a "General Discharge." *Id.* ¶ 24. Coates then published this information to the Texas Commission on Law Enforcement ("TCOLE").[1] *Id.* Plaintiffs further allege that Coates "published, or caused to be published, highly stigmatizing information concerning Upshaw and Fowler to local news outlets[,] including the Stephenville Empire Tribune newspaper[, which] ran a story including stigmatizing information concerning Upshaw and Fowler." *Id.* ¶ 23.

Plaintiffs allege that the manner and circumstances around their termination have so stigmatized them that their reputations have been irreparably harmed and that they suffered severe

---

[1] TCOLE is a state agency that performs quasi-judicial functions and promulgates rules regarding licensure of law enforcement officers. *See Hall v. Tex. Comm'n on Law Enf't*, 685 F. App'x 337, 338 (5th Cir. 2017); *Freedom from Religion Found., Inc. v. Mack*, Civ. A. No. H-17-881, 2017 WL 10717622, at *1 (S.D. Tex. Dec. 12, 2017).

emotional distress and mental anguish. *Id.* ¶ 24. According to Plaintiffs, the "General Discharge" was a "proverbial 'kiss of death' for a law enforcement officer," so their employment opportunities have been substantially foreclosed. *Id.*

Plaintiffs both requested a name clearing hearing, but were denied their requests. *Id.* ¶ 25. Plaintiffs allege that they have been given neither notice as to why they were terminated nor the due process hearing to which they were entitled. *Id.* According to Plaintiffs, "the actual reason why Coates made the stigmatizing remarks about Upshaw and Fowler, and caused their suspensions without pay and terminations, was because Upshaw and Fowler exercised their free speech regarding Coates'[s] disgusting and inappropriate speech and actions." *Id.* ¶ 24.

Plaintiffs each assert three causes of action in their First Amended Complaint. In Count I, Plaintiffs assert claims for deprivation of civil rights under 42 U.S.C. § 1983. Plaintiffs allege that Defendants' actions (i) deprived them of their right to free speech as secured by the First Amendment, (ii) deprived them of their procedural due process rights, and (iii) deprived them of their substantive due process rights. In Count II, Plaintiffs assert claims for deprivation of due course of law under Texas Constitution Article I, § 19. In Count III, Plaintiffs assert claims for violations of the Texas Whistleblower Act ("TWA").

Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Coates asserts a defense of qualified immunity as to the claims brought against him in his individual capacity.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual

3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

#### A. *42 U.S.C. § 1983 Claims*

Plaintiffs bring § 1983 claims against Defendants, alleging deprivation of their right to free speech and procedural and substantive due process. Defendants move to dismiss these claims pleaded against them in their official capacities for failure to state a claim. Defs.' Br. 6-15. Additionally, Coates moves to dismiss the claims alleged against him in his individual capacity on the basis of his qualified immunity. *See* Defs.' Br. 3-6.

4

### (1) *Free Speech Claims*

> 'To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.'

*Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007). Defendants challenge the Complaint only as to the second and fourth elements. The Court disagrees with this challenge and finds that Plaintiffs have sufficiently pleaded the second and fourth elements of their § 1983 claim for employment retaliation related to speech.

First, the Court finds that Plaintiffs adequately alleged that they spoke as citizens on a matter of public concern. A public employee's speech "is not protected by the First Amendment [if] it was made . . . during the course of performing his job." *Id.* at 595 (alterations in original). To determine whether the speech was made in the course of performing one's job, the Court looks to "whether the speech at issue is itself *ordinarily* within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (emphasis added). As Texas "adopted the *Restatement (Third) of Agency*," whether an act is within the scope of employment depends on whether the employee was "performing work assigned by the employer or *engaging in a course of conduct subject to the employer's control.* . . . If the employer was entitled to exercise such control, the speech is made pursuant to the employee's official duties; if the employer was not entitled to exercise such control, the speech is not made pursuant to the employee's official duties." *Valdez*, 845 F.3d at 596.

Examples are illustrative. In *Valdez*, the Fifth Circuit held that a briefing attorney for a Texas state court engaged in protected speech when he reported a chief judge for potential

5

malfeasance, because making such complaints was not within the scope of the briefing attorney's duties, the attorney's supervisor did not ask him to make the complaint, and the attorney alleged that he did it on his own initiative. *Id.* at 586-87, 597-99. As another example, a teacher could not be terminated for complaining to her principal about the school's discriminatory hiring practices. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-17 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [the freedom of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."). On the other hand, the Supreme Court held that a district attorney did not engage in protected speech when she asked what her colleague's views were on office morale and the policy of transferring employees. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983) (noting that the result may have been different had the attorney attempted "to bring to light actual or potential wrongdoing or breach of public trust"). The Fifth Circuit also held that an athletic director did not engage in protected speech when he wrote memoranda accusing office manager of "hurt[ing his] ability to provide . . . student/athletes with critical items and/or materials necessary for competition." *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693-94 (5th Cir. 2007) (alteration in original).

Viewing the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately alleged that they were speaking as citizens on a matter of public concern. Plaintiffs allege that they complained to the DA because they were "protective of the reputation of the . . . Sheriff's office" and "were both determined to not allow the department to get in" another "scandal involving sexual harassment." Am. Compl. ¶ 15. Thus, the Complaint suggests that Plaintiffs were acting on their own initiative, rather than pursuant to an official duty. Plaintiffs were also attempting "to bring to light actual or potential wrongdoing," which indicates that they

were speaking on a matter of public concern. *Cf. Connick*, 461 U.S. at 147-48. Although Defendants contend that reporting misconduct "is exactly the type of responsibility that comes with being the Chief Deputy and the Captain in the Sheriff's Office," Defendants did not cite to any evidence the Court can consider on a motion to dismiss in support of this allegation. *See, e.g., Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("[The] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (citation omitted)). Limited to the pleadings, the Court finds no reason to believe that Defendants could exercise control over the manner in which officers reported misconduct of their own volition. *See Valdez*, 845 F.3d at 597 ("[S]tatements or complaints . . . made outside the *duties of employment* . . . [are] *never* made pursuant to an employee's official duties."); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (the court is limited to the face of the pleadings). Accordingly, the Court finds that Plaintiffs have adequately pleaded the second element of their § 1983 claim for retaliation related to speech.

Similarly, the Court finds that the Complaint adequately alleges that the speech precipitated the adverse employment action. To prevail on their § 1983 claim, Plaintiffs must show that the protected conduct was a motivating factor in their discharge. *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). In so pleading, Plaintiffs are "not required to allege *how* [Defendants] knew of the . . . complaint, only that [they] knew." *Valdez*, 845 F.3d at 592. To recover against a municipality, however, Plaintiffs must show that the execution of an official policy caused the injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, Plaintiffs must have pleaded facts showing that the municipal Defendants "adopted the allegedly impermissible motives . . . through acting on [Coates's] recommendation or delegated its policymaking authority in the . . . [employment area]" to Coates. *Beattie*, 254 F.3d at 601-02.

7

The Court finds that Plaintiffs alleged sufficient facts on this element. Plaintiffs allege that the District Attorney, to whom they complained about Coates, is Coates's friend and that he "personally advised Coates of [Plaintiffs'] complaint." *See* Am. Compl. ¶¶ 18-19. Plaintiffs further allege that Coates terminated them "within an hour after being sworn in as the new Sheriff," and that Defendants delegated their policy-making authority to Coates. *Id.* ¶¶ 21-22, 35, 48. Accepting these facts as true, the Court finds that Plaintiffs adequately alleged that Coates terminated them because they engaged in protected speech.

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss the portions of Count I that are based on the alleged deprivation of Plaintiffs' First Amendment free speech rights.

### (2) *Procedural Due Process Claims*

Certain public employees enjoy a property interest in their continued employment, and are entitled to procedural due process prior to termination. *See Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). "In Texas," however, "there exists a presumption that employment is at-will unless that relationship has been expressly altered . . . by contract . . . or by express rules or policies." *Id.* (citations omitted). Plaintiffs neither allege nor argue that they have a property interest in their employment because of a contract, rule, or policy. Instead, Plaintiffs argue that they have a property interest in their continued employment because of their long tenure, and because their termination involved stigmatizing charges (the "stigma-plus-infringement" claim). *See* Resp. 9-14.

The Court finds that a long tenure, by itself, is insufficient to establish a property interest in continued employment. Plaintiffs needed to "allege with specificity the particular state rule, regulation, law[,] or understanding between the parties giving rise to the requirement of just cause prior to termination." *Brown v. Tex. A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986). Accordingly,

8

Plaintiffs' allegations regarding the length of their tenure are insufficient to overcome the presumption that they were employed at-will.

Further, the Court finds that Plaintiffs pleaded insufficient facts to state a stigma-plus-infringement procedural due process claim. To state a stigma-plus-infringement claim, a plaintiff must show:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request."

*Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) (citation omitted). "[F]or a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to 'a "badge of infamy," public scorn, or the like.'" *Campos v. Guillot*, 743 F.2d 1123, 1125 (5th Cir. 1984) (quoting *Ball v. Bd. of Trustees of Kerrville Indep. Sch. Dist.*, 584 F.2d 684, 685 (5th Cir. 1978)). Examples of dismissals held to be stigmatizing includes dismissals for dishonesty or for having committed a serious felony. *See White v. Thomas*, 660 F.2d 680, 684-85 (5th Cir. 1981); *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975). In contrast, dismissals that merely suggest inadequate job performance or incompetence are not sufficient. *See Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996); *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. Nov. 1989); *Ball*, 584 F.2d at 685.

Here, the Court finds that Plaintiffs' well-pleaded allegations do not suggest that Plaintiffs were branded with a badge of infamy or public scorn. The Complaint states that Plaintiffs were branded as "Generally Discharged," which is "like the proverbial 'kiss of death' for a law enforcement officer who seeks future employment in the law enforcement area." Am. Compl. ¶ 24. Per Texas law, however, a "General Discharge" means either that the termination "was

related to a disciplinary investigation of conduct that is *not* ... criminal misconduct [or] insubordination or untruthfulness," or that the termination was "for a documented performance problem." TEX. OCC. CODE ANN. § 1701.452(b)(2)-(3) (emphasis added). Accordingly, the "General Discharge" merely suggests that Plaintiffs' performance was inadequate or incompetent, rather than that Plaintiffs committed a serious felony or were dishonest. *See Vander Zee*, 73 F.3d at 1369. Moreover, Plaintiffs' remaining allegations of stigmatization are conclusory. *See Ferrer*, 484 F.3d at 780. The Complaint states only that (1) Plaintiffs were removed from their office "in a hostile and humiliating manner, creating an impression of wrongdoing"; and (2) Defendants published unspecified, but "highly stigmatizing information concerning [Plaintiffs] to local news outlets." Am. Compl. ¶ 23. Plaintiffs have not alleged any facts showing that the manner of their removal or the information published with local news outlets branded Plaintiffs with a badge of infamy.

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss the portions of Count I that are based on the alleged deprivation of Plaintiffs' procedural due process rights.

### (3) *Substantive Due Process Claims*

"To succeed with a claim based on substantive due process in the public employment context, [Plaintiffs] must show two things: (1) that [they] had a property interest/right in [their] employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (citation omitted). Plaintiffs claim that their termination violated their substantive due process rights because it created false and defamatory impression about Plaintiffs, thereby foreclosing Plaintiffs' other employment opportunities. *Id.* ¶¶ 39, 52. "There is no 'constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.'" *Kovac v. Wray*, 363 F. Supp.

10

3d 721, 752-53 (N.D. Tex. 2019) (quoting *Paul v. Davis*, 424 U.S. 693, 702 (1976)). Accordingly, Plaintiffs cannot base their substantive due process claim on the alleged defamation alone. Furthermore, Plaintiffs have not sufficiently alleged that their termination implicates a liberty interest under a stigma-plus test. *See id.* at 753 (citing *Paul*, 424 U.S. at 711). As explained above, the allegations in the Complaint do not suggest that Plaintiffs were branded with a badge of infamy or public scorn. Accordingly, the Court grants Defendants' Motion and dismisses the portions of Count I that are based on the alleged deprivation of Plaintiffs' substantive due process rights.

### (4) *Qualified Immunity*

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). When a defendant raises a qualified immunity defense, the plaintiff has the burden of demonstrating the inapplicability of that defense. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). To meet this burden, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly

11

established' at the time of the challenged conduct."[2] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, the right must already be clearly established at the time of the challenged conduct. *Lane v. Franks*, 573 U.S. 228, 243 (2014). When considering whether a defendant is entitled to qualified immunity, the Court "must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan*, 659 F.3d at 371 (alteration in original) (emphasis omitted) (quoting *al-Kidd*, 563 U.S. at 741).

Defendants' only argument for qualified immunity is that Plaintiffs did not sufficiently allege a violation of Plaintiffs' constitutional rights.[3] The Court finds that Plaintiffs met their burden of showing that Coates is not entitled to qualified immunity as to the alleged violation of Plaintiff's freedom of speech. First, the Court finds that, as public employees, Plaintiffs' right to engage in speech as citizens on a matter of public concern has been clearly established for decades. *See Rankin v. McPherson*, 483 U.S. 378, 383 (1987) (A public employer "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); *Valdez*, 845 F.3d at 590 (explaining the elements of an employee's claim for

---

[2] Defendants assert that Plaintiffs' claims are subject to a heightened pleading standard because Defendants' Rule 12(b)(6) Motion to Dismiss asserts a defense of qualified immunity. "[Defendants] misconstrue[] [Fifth Circuit's] precedent . . . . [W]hen, as here, a qualified immunity defense is asserted in an answer or motion to dismiss, 'the district court must'—as always—do no more than determine whether [Plaintiffs have] 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.' . . . After applying this general pleading standard to the complaint, 'the court *may* [*then*], *in its discretion*, insist that [Plaintiffs] file a reply tailored to [Defendants'] answer [or motion to dismiss] pleading the defense of qualified immunity." *Valdez*, 845 F.3d at 590.
[3] As Plaintiffs did not sufficiently plead a violation of their procedural and substantive due process rights, the Court finds that Coates is entitled to qualified immunity on those claims. *See Whitley*, 726 F.3d at 638 (holding that to show the inapplicability of a qualified immunity defense, a plaintiff must show "that the official violated a statutory or constitutional right").

retaliation because of protected speech). Thus, the Court has "little difficulty concluding that [Coates] would be unreasonable in failing to recognize that [he] had First Amendment obligation toward" Plaintiffs. *Kinney v. Weaver*, 367 F.3d 337, 368-69 (5th Cir. 2004).

Second, the Court finds that Plaintiffs adequately pleaded that Coates violated Plaintiffs' right to engage in speech as citizens on a matter of public concern. As explained above, Plaintiffs pleaded sufficient facts showing that they engaged in protected speech when they reported Coates's sexual misconduct to the DA. *See Kinney*, 367 F.3d at 369 (noting that "official misconduct is of great First Amendment significance"). Thus, "it would have been objectively unreasonable for [Coates] to conclude that [Plaintiffs' complaint] was anything other than highly valuable speech" that could only be suppressed "by a weighty governmental interest."[4] *Id.* Defendants have not suggested a weighty governmental interest for suppressing the speech, and Plaintiffs adequately pleaded facts suggesting that Coates retaliated against them for reporting the alleged sexual misconduct. *See Goudeau v. East Baton Rouge Parish Sch. Bd.*, 540 F. App'x 429, 437 (5th Cir. 2013) (noting that the plaintiff must allege that the defendant participated in the adverse employment decision). The Complaint states that: (1) Plaintiffs' accused Coates of serious sexual harassment; (2) the DA notified Coates of Plaintiffs' complaint; (3) Coates suspended Plaintiffs within hours of becoming sheriff; and (4) although Plaintiffs were allegedly terminated because of an investigation into their misconduct, Plaintiffs received no results or reports regarding the investigation. Am. Compl. ¶¶ 16, 18, 19, 21-24. "Since all factual disputes must be resolved in favor of" Plaintiffs, the Court finds that Plaintiffs pleaded sufficient factual content to allow the

---

[4] The Court cannot conclude, at this stage of the litigation, that Coates was reasonably mistaken and believed that Plaintiffs were engaging in speech pursuant to their ordinary job duties. By November 9, 2016, over a month before the alleged termination, the Fifth Circuit explained that "when employees speak outside of their chain of command and outside of their job duties they are entitled to First Amendment protection." *Valdez*, 845 F.3d at 602. Even if Coates believed that reporting interoffice misconduct was a general duty of a chief deputy and captain in the sheriff's office, the Fifth Circuit explained that "speech pursuant to that general duty is protected by the First Amendment" unless it is part of the "'ordinary' official duties." *Id.*

Court to draw the reasonable inference that Coates's conduct violated Plaintiffs' clearly established rights. *Blackwell v. Laque*, 275 F. App'x 363, 367-68 (5th Cir. 2008). Accordingly, the Court denies Defendants' Motion to Dismiss the claims asserted against Coates in his individual capacity on the basis of qualified immunity.

### B. *Texas Constitution, Article I, § 19 Claims*

"The protections afforded by the Texas Constitution's Due Course of Law Clause and the United States Constitution's Due Process Clause are generally the same." *Lindquist v. City of Pasadena*, 669 F.3d 225, 238 (5th Cir. 2012); *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004). Accordingly, the Court finds that Plaintiffs did not state a claim under Texas Constitution's Due Course of Law Clause for the same reasons the Court finds that Plaintiffs did not adequately plead violations of their procedural and substantive due process rights under the U.S. Constitution. The Court grants, therefore, Defendants' Motion to Dismiss Count II.

### C. *Texas Whistleblower Statute*

Defendants contend that Plaintiffs' claim under the Texas Whistleblower Statute is untimely because Plaintiffs did not file suit within 90 days of the alleged violation. *See* TEX. GOV'T CODE ANN. § 554.005; Defs.' Br. 18-19. The Court may dismiss claims that are time-barred if "it is evident from [Plaintiffs'] pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). "Although defendants bear the burden of pleading and proving affirmative defenses, where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted." *Drake v. Fitzsimmons*, Civ. A. No. 3:12-CV-1436-B, 2013 WL 775354, at *2 (N.D. Tex. Mar. 1, 2013).

The Court finds that Plaintiffs' claim brought under the Texas Whistleblower Statute is untimely. "[A] public employee" alleging a violation of the Texas Whistleblower Statute "must

14

sue not later than the 90th day after the date on which the alleged violation ... occurred[,] or ... was discovered by the employee through reasonable diligence." TEX. GOV'T CODE ANN. § 554.005. Although Plaintiffs allege that Coates suspended them on December 20, 2016, Plaintiffs did not file suit until July 5, 2017—well outside the limitations period. *See* Am. Compl. ¶ 22. Plaintiffs do not dispute that their Complaint was filed outside the 90 days limitations period. Instead, Plaintiffs contend that they attempted to obtain a name-clearing hearing and, therefore, the statute of limitations is tolled for that period. *See* Resp. 16-17. To toll the limitations period, a public employee must "initiate action under the grievance or appeal procedures of the employing state or local governmental entity" within 90 days of the violation. TEX. GOV'T CODE ANN. § 554.006. It is not clear whether a name-clearing hearing constitute a "grievance or appeal procedure" within the meaning of § 554.006. Some courts have held that "[t]he purposes of the [Texas Whistleblower Statute] are better effectuated by an interpretation that allows those state entities which do not have clearly written procedures to use their own informal procedures." *Wagner v. Tex. A&M Univ.*, 939 F. Supp. 1297, 1324 (S.D. Tex. 1996). The Court does not need to reach this question, however, because the Complaint is silent as to when Plaintiffs requested a name clearing hearing. Thus, "it is evident from [Plaintiffs'] pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones*, 339 F.3d at 366. Accordingly, the Court dismisses Count III.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss. The Court denies the Motion as to Plaintiffs' freedom of speech claims. The Court also denies the Motion to dismiss the freedom of speech claims against Coates in his individual capacity. The Court grants the Motion as to Plaintiffs' procedural due process, substantive due process, Texas due course of law, and Texas Whistleblower Statute claims. Plaintiffs have not

sought leave to amend. If Plaintiffs wish to amend the dismissed claims, they must seek leave to file an amended complaint by July 1, 2019. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, these claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED June 3, 2019.

*/s/ Karen Gren Scholer*

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**