IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON UPSHAW | § | |
| and RANDY FOWLER, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| ERATH COUNTY, TEXAS; SHERIFF | § | CIVIL ACTION NO. 3:17-CV-01758-S |
| MATT COATES, in his individual and | § | |
| official capacity; and DEE STEPHENS, | § | |
| HERBERT BROWN, JOE BROWN, and | § | |
| SCOT JACKSON, as County | § | |
| Commissioners, in their official capacities | § | |
| only, | § | |
| *Defendants*. | § | |

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE
PLEADINGS AND ALTERATIVE MOTION FOR SUMMARY JUDGMENT**

---

GRANT D. BLAIES
State Bar No. 00783669
E-mail: grantblaies@bhilaw.com

JAMES W. HRYEKEWICZ
State Bar No. 00784298
E-mail: jhryekewicz@bhilaw.com

**BLAIES & HIGHTOWER, L.L.P.**
420 Throckmorton Street, Suite 1200
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..........................................................................................iii

I.      Plaintiffs Did Not Speak as Private Citizens on a Matter of Public Concern......................2

        A.  Plaintiffs Had a Duty Under Texas Law.................................................................2

        B.  Plaintiffs Had a Duty Under Federal Law ..............................................................4

        C.  Plaintiffs Had a Duty Under Erath County Policy...................................................6

II.     Plaintiffs' Speech Did Not Cause any Adverse Employment Action................................8

III.    Plaintiffs Were Not Deprived of any Procedural Due Process Rights..............................13

IV.     Plaintiffs Were Not Deprived of any Substantive Due Process Rights ...........................17

V.      Plaintiffs Were Not Deprived of any Due Course of Law Rights ...................................21

VI.     Matt Coates is Entitled to Qualified Immunity................................................................21

VII.    Conclusion ......................................................................................................................22

CERTIFICATE OF SERVICE .................................................................................................23

# INDEX OF AUTHORITIES

**CASES:**

*Bellard v. Gautreaux,*
  975 F.3d 454 (5th Cir. 2012)..................................................................13, 15, 20

*Bishop v. Wood,*
  426 U.S. 341 (1976)...........................................................................14

*Cabrol v. Town of Youngsville,*
  106 F.3d 101 (5th Cir. 1997) ................................................................16, 17

*Campos v. Guillot,*
  743 F.2d 1123 (5th Cir. 1984)..............................................................14, 15

*Federal Express Corp. v. Dutschmann,*
  846 S.W.2d 282 (Tex. 1993)................................................................18, 19

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006)...........................................................................3

*Garza v. Harrison,*
  574 S.W.3d 389 (Tex. 2019).................................................................2, 3

*Lewis v. University of Texas Medical Branch,*
  665 F.3d 625 (5th Cir. 2011) ................................................................17

*Lindquist v. City of Pasadena,*
  669 F.3d 225 (5th Cir. 2012)................................................................21

*Matamoras v. Starbucks Corp.,*
  699 F.3d 129 (1st Cir. 2012) ................................................................18

*McDonald v. City of Corinth,*
  102 F.3d 152 (5th Cir. 1996)................................................................18

*Moulton v. Beaumont,*
  991 F.2d 227 (5th Cir. 1993)................................................................17, 19

*Montgomery County Hospital District v. Brown,*
  965 S.W.2d 501, 502 (Tex. 1997).........................................................17-18

*Tex. Workers' Comp. Comm'n v. Patient Advocates,*
  136 S.W.3d 643 (Tex. 2004)................................................................21

*W.T. Waggoner Estate v. Sigler Oil Co.*,
    118 Tex. 509, 19 S.W.2d 27 (Tex. 1929)..........................................................................19

*Williams v. Dallas I.S.D.*,
    480 F.3d 689 (5th Cir. 2007)..............................................................................3, 4

## CODE OF FEDERAL REGULATIONS:

29 C.F.R. § 1604.11 ..............................................................................................4

## TEXAS STATUTES:

Tex. Code Crim. Pro. ........................................................................................2

Tex. Occ. Code § 1701 ....................................................................14, 15, 19, 21

Tex. Penal Code ch. 31..........................................................................................2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON UPSHAW | § | |
| and RANDY FOWLER, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| ERATH COUNTY, TEXAS; SHERIFF | § | CIVIL ACTION NO. 3:17-CV-01758-S |
| MATT COATES, in his individual and | § | |
| official capacity; and DEE STEPHENS, | § | |
| HERBERT BROWN, JOE BROWN, and | § | |
| SCOT JACKSON, as County | § | |
| Commissioners, in their official capacities | § | |
| only, | § | |
| *Defendants*. | § | |

---

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND ALTERATIVE MOTION FOR SUMMARY JUDGMENT

---

GRANT D. BLAIES
State Bar No. 00783669
E-mail: grantblaies@bhilaw.com

JAMES W. HRYEKEWICZ
State Bar No. 00784298
E-mail: jhryekewicz@bhilaw.com

**BLAIES & HIGHTOWER, L.L.P.**
420 Throckmorton Street, Suite 1200
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)

ATTORNEYS FOR DEFENDANTS

NOW COME Defendants in the above-styled and numbered cause and, pursuant to Fed. R. Civ. P. 12(c) and 56 file this Reply in Support of Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment.

## I.   Plaintiffs Did Not Speak as Private Citizens on a Matter of Public Concern

Plaintiffs seek to recharacterize their accusations against Mr. Coates as speech by private citizens on a matter of public concerns.  In so doing, they turn a blind eye to the duties of their jobs under Texas law, federal law, and Erath County policy, which variously imposed significant duties on them regarding both allegations of crime and allegations of harassment.

## A.   Plaintiffs Had a Duty Under Texas Law

It is indisputable that Article 2.13(a) of the Texas Code of Criminal Procedure states:  "It is the **duty** of every peace officer to preserve the peace within the officer's jurisdiction.  To effect this purpose, the officer **shall** use all lawful means."  TEX. CODE CRIM. PRO. art 2.13(a) (emphasis added).  "The officer **shall**: in **every** case authorized by the provisions of this Code interfere without warrant to prevent or suppress crime."  TEX. CODE CRIM. PRO. art 2.13(b)(1) (emphasis added).  As pointed out by the Texas Supreme Court, the effect of this statute is unambiguous. "The term 'shall,' as the Legislature has explained in the Code Construction Act, 'imposes a duty.' And 'every' means 'without exception.'"  *Garza v. Harrison*, 574 S.W.3d 389, 401-02 (Tex. 2019).  Given that Plaintiffs have:

(1)    admitted they were Texas peace officers [Doc 41 at ¶ 12, 13]; and

(2)    have pled that their allegations against Mr. Coates "concerned the theft of government time" [Doc 41 at ¶ 35] (*see, e.g.*, TEX. PENAL CODE ch. 31 (Theft)):

it was their duty (*i.e.* part of their job) to act on any such crime, and that duty was "without exception."  Further, that duty required them to use "all lawful means," not just telling their boss and stopping there.

Plaintiffs' duty to prevent crime under the Texas Code of Criminal Procedure is far broader than many job duties.  Again quoting the Texas Supreme Court:  "Article 6.06 [of the Texas Code of Criminal Procedure] states that '[w]henever, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, . . . it is his duty to prevent it.'  The statute places no territorial constraint on this command to prevent crime to person or property."  *Garza v. Harrison*, 574 S.W.3d at 402.  "Peace officers are also expected to stop crime whenever it occurs.  Peace officers retain their status as peace officers twenty-four hours a day, which means that a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity."  *Id.* (internal quotes and citations omitted).

Plaintiffs were Texas peace officers when they lodged their complaints regarding Mr. Coates and his alleged "the theft of government time."  [Doc 41 at ¶ 35]  Given their duties under Texas law, including the duty to use all lawful means to interfere with crime, Plaintiffs should not now be heard to claim that their actions were not pursuant to their official duties.  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  "Even if the speech is of great social importance, it is not protected by the *First Amendment* so long as it was made pursuant to the worker's official duties."  *Williams v. Dallas I.S.D.*, 480 F.3d 689, 692 (5th Cir. 2007).  "Activities undertaken in the course of performing one's job are activities

pursuant to official duties." *Id.* at 693. This is true even if the speech at issue is not required by that public job. *Id.* at 694 ("Simply because Williams wrote memoranda, which were not demanded of him, does not mean that he was not acting within the scope of performing his job.").

**B.      Plaintiffs Had a Duty Under Federal Law**

Plaintiffs also allege that their complaint about Mr. Coates concerned "inappropriate conduct by Coates under Title VII." *Doc 41* at ¶ 35. As the Court is aware, the federal government imposes specific duties on employers regarding sexual harassment, by both employee and non-employees. Those duties expressly extend to agents and supervisory employees of the employer:

> (d)      With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or **supervisory employees**) knows or should have known of the conduct, unless it can show that it took **immediate and appropriate corrective action**.

> (e)      An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or **supervisory employees**) knows or should have known of the conduct and fails to take **immediate and appropriate corrective action**.

29 C.F.R. § 1604.11 (emphasis added).

Plaintiffs do not contest that they were agents or supervisory employees of the Erath County Sheriff's Office when they made their complaints regarding Mr. Coates. Instead, they appear to focus their attention on claiming that: (1) they did not supervise Mr. Coates because he was not an employee of the Sheriff's Office; and (2) they did not supervise the female employees that they alleged Mr. Coates harassed. Those arguments are quickly dispatched. First, the Title VII regulations expressly apply to "acts of non-employees." 29 C.F.R. § 1604.11. Second, these regulations do not limit the obligation to "take immediate and appropriate corrective action" to a supervisory employee who is a supervisor of the specific employee allegedly being harassed.

Third, even if the regulations were limited to direct chain-of-command supervisors, the summary judgment evidence affirmatively establishes that Plaintiffs managed and supervised all personnel at the Erath County Sheriff's Office.

The job description for Chief Deputy expressly states: "The chief deputy is appointed by the Sheriff and is responsible for the day-to-day operation of the Sheriff's Office. This position is **responsible for the management of each division and section**, as well as the administrator for the Sheriff's Office." *APP 016* (emphasis added). Upshaw identified this as his job description and even read this provision out loud during his deposition:

> Q.   Hand you what's been marked as Deposition Exhibit 17. Is that your job duties as chief deputy when you were chief deputy at Erath County Sheriff's Office?
>
> A.   Yes, sir, it appears to be.
>
> Q.   Read the first two sentences of Job Summary out loud for the jury.
>
> A.   The chief deputy is appointed by the Sheriff and is responsible for the day-to-day operation of the Sheriff's Office. This position is responsible for the management of each division and section, as well as the Administrator for the Sheriff's Office.

*APP 28.*

Similarly, the job description for Captain states: "The Captain reports to the Chief Deputy and **supervises all personnel** on a management level." *APP 035* (emphasis added). Fowler agreed that job description accurately set forth his job duties as Captain of the Erath County Sheriff's Office:

> Q:   I'll hand you what I've marked Deposition Exhibit 21. Does this set forth the job duties of the captain position with the Erath County Sheriff's Office when you were captain?
>
> A.   Yes, sir.

Q.   Do you disagree with any of the job duties set forth on Deposition Exhibit 21?

A.   No, sir.

*APP 006.*

Plaintiffs' claim that "there is nothing whatsoever in the summary judgment record indicating in any way that Fowler or Upshaw were the supervisors of the women Coates harassed" [*Doc 49* at 13] is simply false.

Additionally, both Plaintiffs were expected to act as agents of the Erath County Sheriff's Office:  They were both required to have the "ability to associate with all County departments in a professional manner."  *App 016*; *App 035*.  Thus, the Plaintiffs had a duty under federal law to "take immediate and appropriate corrective action" if they knew or should have known of sexual harassment.  Again, Plaintiffs should not now be heard to claim that their actions were not pursuant to their duties as agents or supervisory employees.

**C.     Plaintiffs Had a Duty Under Erath County Policy**

Plaintiffs also had relevant duties under the Erath County Employee Handbook.  With regard to sexual harassment, the Erath County Employee Handbook expressly states:  "Sexual harassment is **strictly prohibited** by Erath County whether committed by an elected official, appointed official, department head, co-worker or **non-employee** with whom the county does business.  It is the policy of Erath County to provide a workplace free from sexual harassment for all employees and to take active steps to eliminate any sexual harassment of which the County becomes aware."  *APP 142* (emphasis added).  "All claims of sexual harassment shall be taken seriously and investigated promptly and thoroughly."  *APP 143*.  Every reported complaint will be investigated promptly and thoroughly.  The official or department head to which a claim has been reported **shall be responsible for seeing that prompt action is taken** to investigate the claim."

*App 143* (emphasis added).  Plaintiffs both received a copy of that Employee Handbook well before the incidents at issue in this suit and acknowledged that "I have read these policies and understand these policies and I agree to abide by and adhere to these policies."  *APP 186*; *APP 187*.  Plaintiffs' counter to this evidence and these duties appears to be largely confined to arguing that they are mere "broad and vague language in employment related documents," and that Mr. Coates was not an employee of the Sheriff's Office at the time of their complaint.  *Doc 49* at 12.  It is difficult to perceive any ambiguity in terms such as "strictly prohibited," "non-employee," and "shall be responsible for seeing that prompt action is taken."  Once again, Plaintiffs' speech was made as public employees made pursuant to their official duties.

The manner in which Plaintiffs chose to pursue their complaint further reinforces the fact that it was made through the chain of command and pursuant to their official duties.  Both Upshaw and Fowler swore in their depositions that they first brought their concerns to their superior, the then-sheriff of Erath County.  *APP 025* at 25:19 - 25:22; *APP 007* at 63:8 – 63:12.  In their response, Plaintiffs emphasize Fowler's more generalized testimony that "we decided we would contact Alan Nash, the district attorney, and have him come out to our office" [*APP 007* at 63:18 – 63:20], while turning a blind eye to Upshaw's more detailed testimony:  "We decided – or, actually, the sheriff decided to call Alan Nash, who was Matt Coates's boss, and ask him to come out there to our office for a meeting and he agreed."  *APP 023* at 22:2 – 22:5.  Nonetheless, Upshaw and Fowler both admitted that the then-sheriff was the person who actually called Alan Nash.  "The sheriff called him, was on speaker phone, said that me and Upshaw were in the room and would he mind coming out to our office to discuss an employee issue."  *APP 008* at 64:20 – 64:22; *APP 023* at 22:13 – 22:21.  That meeting occurred—not in the district attorney's office or some venue

unrelated to Plaintiffs' jobs—but in the sheriff's office.  *APP 027* at 22:2 – 22:21; *APP 008* at 64:20 – 65:7.

Upshaw's own testimony further reinforced the official nature of that meeting with the district attorney.  According to Upshaw's sworn deposition testimony:  "The sheriff told him that – Mr. Nash – that Matt Coates was not welcome in our office anymore, unless he was on official business, then he needed to get his business taken care of and go back to the courthouse."  *APP 027* at 22:25 – 23:4.  Mr. Nash responded that  "[h]e would handle it and thanked up for making him aware of that."  *Upshaw Deposition* at 23:5 – 23:7.  Fowler testified he was not even present for any of that meeting except to come in at the very end and overhear the district attorney say that he would take care of the issue.  *APP 024* at 65:10 – 65:22.

Thus, the then-sheriff: (1) made the decision to speak with the district attorney; (2) made the actual call to the district attorney; (3) hosted the resulting meeting in his office; (4) controlled that meeting; and (5) kept it focused on official business of the Sheriff's Office.  The summary judgment evidence establishes that Plaintiffs were not speaking as citizens, but as public employees making statements pursuant to their official duties.  Defendants are entitled to summary judgment on Plaintiffs' First Amendment claims.

## II.     Plaintiffs' Speech did not Cause any Adverse Employment Action

In an attempt to create a fact issue where none exists, Plaintiffs attempt to divert attention away from the independent investigations by TCOLE and the Texas Attorney General's office that began well before the events of December 20, 2016.  The TCOLE investigation involving Plaintiffs began back in September 2016 – more than three months before the prior sheriff killed himself and Mr. Coates was appointed Sheriff.  *APP 107*.  That TCOLE investigation culminated in the TCOLE investigator identifying several possible criminal acts by both Plaintiffs:

2/8/17

On 2/8/17, I met with the Texas Attorney General Prosecutor Jason Scully Clemmons and Texas Ranger Investigator Danny Briley.  I turned over to each of them a thumb drive with all files of this investigation.  Based on my findings, I believe that possible charges can be filed on **Jason Upshaw** through TCOLE administrative violations as well as potential criminal charges.  I feel that **Jason Upshaw** committed **Tampering with a Governmental Record** State Jail Felony based on his actions with Cameron Ray and ordering him to take online courses for Sheriff Tommy Bryant.  Furthermore, I have an independent witness, Judith Riola who confirmed this information and was present.  All other types of "cheating" cases I learned of are past the statute of limitations for filing charges.  During this investigation involving possible cheating violations, I was able to determine that numerous other possible criminal violations may have occurred.  I took numerous statements and gathered some audio, video and paper evidence to show these possible violations.  There is a pending criminal investigation led by Erath County Auditor Janet Martin where several of the suspects I have identified may also be involved in her investigation.

Further investigation revealed that other employees of the Erath County Sheriff's Office possibly violated numerous laws.  The following officers/employees that worked at the Erath County Sheriff's Office should be looked at with follow up investigation completed: Tommy Bryant (then Sheriff, now deceased), **Jason Upshaw**, **Randy Fowler**, Weldon Wilson and Donna Kirklen.  Each of these employees was directly involved in either the possible act of **Tampering with a Governmental Record**, **Official Oppression**, **Abuse of Position**, or **Forgery**.

*APP 112-13* (emphasis added).

Plaintiffs also attempt to discredit this investigation and its results by telling the Court:

"After speaking with Coates, the Texas Office of the Attorney General pressed criminal charges

against Fowler and Upshaw.  D.App. 110-111."  *Doc 49* at ¶ 43.  That "evidence," however, does

not identify any conversation between Mr. Coates and the Texas Office of the Attorney General.

Neither does that "evidence" support any inference of a causal link.  To the contrary, those pages

of the TCOLE investigator's report reflect a completely appropriate call from a newly appointed

sheriff attempting to assess the status of his department and offering that investigator access to any

Sheriff's Office employees or anything else needed for the TCOLE investigation:

At 3:41 pm, I received a call from Erath County District Attorney Investigator Matt Coates. Matt informed me that he had just been selected through the *quo warranto* process to be the interim Sheriff of Erath County. I asked when this takes affect and he said it already has and that he has already moved into office. Sheriff Coates then asked some questions regarding the continuing investigation regarding TCOLE case. I explained to Sheriff Coates that at this time I still had numerous officers that may need to be interviewed and that certain aspects of this case go past what I normally investigate with TCOLE. Sheriff Coates said that if I needed to interview any of his employees that I would have free access to them. I told him that my partner and I would probably plan on coming back to Stephenville on 12/28/16 and continuing our interviews and would need access to his agency. He said that he would make available anything that we wished.

*APP 110-11.*

This conversation does nothing to create a fact issue in favor of Plaintiffs.

Plaintiffs also seek to create a false impression regarding the decision to not rehire Plaintiffs by providing the Court with only one small excerpt of Mr. Coates' testimony regarding what he knew when he made that decision. Consistent with Federal Rule of Evidence 106, Defendants offer additional portions of Mr. Coates' deposition testimony that in fairness ought to be considered. Those portions are pages 26:17 – 31:4; 43:9 – 45:1; 51:13 – 52:15. The following exchange from pages 51 and 52 illustrates the increasingly untenable position that retaining Plaintiffs as commissioned peace officer would have created:

Q.   What had changed between December 20th and January 1 that you said gave you the right to terminate them?

A.   I spoke with the investigator in depth. I told him I was in a very precarious situation. I needed to know what was going on. He was reluctant to share with me, since it was an investigation, an open investigation.

Q.   Who is this?

A.   Stan Roper.

Q.   Okay.

A.   He told me at the time that it was going deeper than just TCOLE. There were other things that he had uncovered. These guys were not going to be

> licensed peace officers at the end of it.  At that time I made my decision January 1 that I would just not ask them back.
>
> Q.   Okay. Did he tell you what it was that he had uncovered that went deeper?
>
> A.   He did not.
>
> Q.   But since he told you that they were going to lose their licenses, you knew it must be very serious?
>
> A.   Yes.
>
> *APP 225-26*.

Obviously, this key information is part of the totality of what Mr. Coates knew or had been told that led to his decision to not rehire Plaintiffs.  Plaintiffs' efforts to suggest otherwise is without merit.

Plaintiffs also claim that the summary judgment evidence does not show that Wilson and Mendez (the other two employees who were suspended and not rehired) were treated the same as Fowler and Upshaw.  This claim is inconsistent with the actual summary judgment evidence.  In his affidavit, Mr. Coates unequivocally states:   "Bobby Mendez and Weldon Wilson were suspended at the same time, in the same manner, and for the same reasons as Jason Upshaw and Randy Fowler." *APP 196-97*.  "Mendez and Wilson were not rehired at the same time, in the same manner, and for the same reasons as Upshaw and Fowler." *APP 197*.  Plaintiffs offer no evidence to contradict these sworn statements.

Plaintiffs' claim is also inconsistent with the deposition of Mr. Coates that Plaintiffs took months earlier:

> Q.   Well, were they in the office on the day that you suspended them without pay?
>
> A.   Yes.
>
> Q.   Now, who all witnessed that event?

A.      Myself and Danny Briley and then each individual person.

Q.      I don't know what you mean. Were the county commissioners there?

A.      Not when I told them they were suspended, no.

Q.      Were my clients escorted out of the office?

A.      I believe so.

Q.      By a Texas Ranger?

A.      No.  He stayed with me.

Q.      Who did?

A.      The Texas Ranger, Danny Briley.

Q.      Where were you?

A.      I went to talk to each individual person, one-by-one.

Q.      Who?  What do you mean, each individual person?

A.      Randy Fowler.

Q.      Okay.

A.      Jason Upshaw, Weldon Wilson, Bobby Mendez.

Q.      You talked to them one-on-one?

A.      Uh-huh.

Q.      Yes?

A.      Yes.

Q.      Was the Ranger with you?

A.      Yes.

Q.      On each stop?

A.      Yes.

*APP 227-28.*

Although Plaintiffs have proffered limited excerpts from Mr. Coates' deposition, they chose to not include this testimony.  Consistent with Federal Rule of Evidence 106, Defendants offer these additional portions of Mr. Coates' deposition testimony (pages 68:18 – 69:24) that in fairness ought to be considered.  In light of Defendants' summary judgment evidence and Plaintiffs' failure to offer any evidence to the contrary, Plaintiffs' argument about Mendez and Wilson not being treated the same is meritless.

### III.    Plaintiffs Were Not Deprived of any Procedural Due Process Rights

As the Court is aware, the Fifth Circuit employs a seven-element stigma-plus-infringement test to determine whether § 1983 allows a government employee a remedy for deprivation of liberty without notice or the opportunity for a name-clearing hearing.  The plaintiff must show:

(1)    he was discharged;

(2)    stigmatizing charges were made against him in connection with the discharge;

(3)    the charges were false;

(4)    he was not provided notice or an opportunity to be heard prior to the discharge;

(5)    the charges were made public;

(6)    he requested a hearing to clear his name; and

(7)    the employer denied the request.

*Bellard v. Gautreaux*, 975 F.3d 454, 461-62 (5th Cir. 2012).

For all the fury of Plaintiffs' response, they still fail to create a fact issue on several of those elements.  They still identify the alleged "highly stigmatizing information" as:

(i)    that Chief Deputy Jason Upshaw and Captain Randy Fowler were suspended without pay, following the apparent suicide of former Sheriff Bryant,

(ii)   that Chief Deputy Jason Upshaw and Captain Randy Fowler were dismissed and intentionally not rehired, and

(iii)   that Chief Deputy Jason Upshaw and Captain Randy Fowler were suspended and later terminated after the death of Sheriff Bryant.

*Plaintiffs APP 4, 10.*

None of those statements meet the threshold for stigmatizing charges.  "For a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a 'badge of infamy,' public scorn, or the like."  *Campos v. Guillot*, 743 F.2d 1123, 1125-26 (5th Cir. 1984).  Further, none of the statements identified by Plaintiffs publicly disclose a reason for their suspension or non-retention.  This is fatal to their claim:

> In *Board of Regents  v. Roth*, 408 U.S. 564, we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."  *Id.* at 575.  This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.

*Bishop v. Wood*, 426 U.S. 341, 348 (1976).

Plaintiffs also attempt to characterize their general discharges stigmatizing charges because they believe them to be "the proverbial kiss of death for a law enforcement officer."  They offer no evidence, however, that Mr. Coates could have given them anything more favorable while still complying with his obligations under Texas law.

Texas law requires the head of a law enforcement agency to submit a report to TCOLE regarding each licensed peace officer who resigns, retires, is terminated, or separates from that agency.  TEX. OCC. CODE §1701.452.  This report "shall" be made on a form prescribed by TCOLE.  TEX. OCC. CODE §1701.452(a).  The head of that law enforcement agency "shall include"

in that report a statement whether the person was honorably discharged, generally discharged, or dishonorably discharged.  TEX. OCC. CODE §1701.452(b).  That same statute defines the criteria for honorably discharged, generally discharged, and dishonorably discharged.  TEX. OCC. CODE §1701.452(b).

The specified TCOLE form also requires the head of the law enforcement agency to "attest that this is a true and accurate explanation of the circumstances under which the person resigned or was terminated." *APP 119*.  As Plaintiffs were "terminated by, retired or resigned from, or died while employed by a law enforcement agency and the separation was related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged," Sheriff Coates was *required* to check the box for "General Discharge" for both Plaintiffs.  *See APP 119*. He did not add any additional details or embellishments to either Plaintiff's F-5.  *APP 193*.

In making this claim, Plaintiffs also ignore the fact that no Defendant publicized their general discharges.  Sheriff Coates only submitted the F-5s for Plaintiffs to TCOLE, and only provided each Plaintiff with a copy of his respective F-5.  TEX. OCC. CODE §1701.452; TEX. OCC. CODE §1701.454; *APP 193*.  The first time Plaintiffs' general discharges were made public was in their Complaints in this matter.  *Complaint* (Doc 1 in this docket); *Complaint* (Doc 1 in Docket No. 3:17-cv-01762-N).  "Under this court's case law, there is no publication for purposes of a deprivation of a liberty interest if the plaintiff caused the stigmatizing facts to be made public." *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012).

Further, a general discharge does not "give rise to a badge of infamy, public scorn, or the like." *Campos v. Guillot*, 743 F.2d at 1125-26.  It is not the same as a dishonorable discharge (TEX. OCC. CODE §1701.452) and it does not have the same effect as a dishonorable discharge (*e.g.*, TEX. OCC. CODE §1701.4521).  It does not preclude an individual from being hired as a peace

officer in the future.  Contrary to Plaintiffs' characterization of a general discharge as a kiss of death, Erath County Sheriff's Office has hired deputies who had prior general discharges— including while Plaintiffs were the chief deputy and captain there.  *APP 198-99.*  Actions speak louder than words, and Plaintiffs' own actions belie their current claim.

An even more obvious flaw in Plaintiffs' procedural due process claim lies in the third element of the stigma-plus-infringement test – the charges must be false.  Nowhere do Plaintiffs allege that any of the statements about which they complain are false.  Nowhere do they claim that Chief Deputy Jason Upshaw and Captain Randy Fowler were NOT suspended without pay, following the apparent suicide of former Sheriff Bryant.  Nowhere do they claim that that Chief Deputy Jason Upshaw and Captain Randy Fowler were NOT dismissed and intentionally not rehired.  Nowhere do they claim that Chief Deputy Jason Upshaw and Captain Randy Fowler were NOT suspended and later terminated after the death of Sheriff Bryant.  To the contrary, the summary judgment evidence establishes that each of these statements is true.  *APP 196-97.*

Indeed, the *Cabrol* opinion cited by Plaintiffs in their response confirms the propriety of summary judgment in favor of Defendants on this claim.  In *Cabrol v. Town of Youngsville*, a public employee was fired because the fighting chickens he raised at his residence were "stinky," "unsightly," and "noisy."  106 F.3d 101, 107 (5th Cir. 1997).  Cabrol subsequently sued, claiming that the city and its mayor deprived him of liberty and property interests without due process.  The district court granted summary judgment for the defendants and the Fifth Circuit affirmed that judgment, stating: "A necessary prerequisite to finding the deprivation of a liberty interest in this scenario is that the publicized basis of the termination was false."  *Id*.  The court then applied that principle to the facts in that case:

> While Cabrol invokes the term "false" in his brief, he does not indicate what aspect of the basis of his termination is false.  He does not contend that he did not raise

chickens in his yard, he does not contend that the mayor did not receive complaints, and he does not contend that his chickens are not "stinky," "unsightly" or "noisy." Cabrol does not argue that a dissemination of falsehoods or untruths about the circumstances surrounding his termination stigmatized him, but rather that the true circumstance of losing his job in connection with his refusal to relocate his chickens caused him some embarrassment.  Such is insufficient.

*Id*.  Such is the case here.  The true circumstances of Plaintiffs losing their jobs may have caused them embarrassment, but it will not support their claims for deprivation of procedural due process.

Thus:

- No stigmatizing charges were made against Plaintiffs in connection with the discharge (Element 2);

- No stigmatizing charges against Plaintiffs were false (Element 3); and

- No false, stigmatizing charges against Plaintiffs were made public. ( Element 5).

Defendants are entitled to summary judgment on Plaintiffs' procedural due process claims.

### IV.    Plaintiffs Were Not Deprived of any Substantive Due Process Rights

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993); *Lewis v. University of Texas Medical Branch*, 665 F.3d 625, 630 (5th Cir. 2011).  Plaintiffs' claim fails at the first step.  The summary judgment evidence proves that they did not have a property interest/right in their employment at the Erath County Sheriff's Office.

"For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery*

*County Hospital District v. Brown*, 965 S.W.2d 501, 502 (Tex. 1997). Under Texas law, employment is at-will unless the employer "unequivocally indicate[s] a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* "The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary." *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993).

No such agreement to the contrary can exist if the employee handbook expressly provides that it does not create any contractual rights. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d at 283; *McDonald v. City of Corinth*, 102 F.3d 152, 157 (5th Cir. 1996). In the instant case, the Erath County Employee Handbook expressly disclaims any contract of employment and expressly disclaims any limitations on the at-will status of county employees. The first substantive provision of this handbook is a section entitled "Employment At-Will." *APP 135* at § 1A-1. This section directly states: "**All** employment with Erath County shall be considered "at will" employment. **No** contract of employment shall exist between any individual and Erath County for any duration, either specified or unspecified. **No** provision of this employee handbook shall be construed as modifying your employment at will status." *APP 135* at § 1A-1 (emphasis added). "No" means no. *E.g.*, *Matamoras v. Starbucks Corp.*, 699 F.3d 129, 134 (1st Cir. 2012) ("No" means "no," and we interpret that easily understood word in its ordinary sense: "not any.")

The absence of any property interest in any job at Erath County is also emphasized in the provisions of the Erath County Employee Handbook addressing discipline:

> **All** County employees are "at will" employees and **nothing** in this policy gives an employee any contract of employment, guarantee of any duration of employment, or **any other property interest in his/her job**.
>
> Erath County **retains the right** to terminate the employment of any individual at any time for any legal reason, or no reason, with or without notice. The County

also retains the right to change any condition, benefit, privilege, or policy of employment at any time, with or without notice.

*APP 145* at § 1B-11 (emphasis added).

Erath County and its employees also went further to ensure that there could be no possible doubt regarding their at-will employment status.  As part of the Erath County Employee Handbook, each employee—including both Plaintiffs—signed an acknowledgement that:

1.  "I have received a copy of the Erath County Employee Handbook.";

2.  "I further understand that the Erath County Employee Handbook is **not** a contract of employment.  I understand that **I am an at will employee** and that my employment may be terminated by either myself or the County, at any time, with or without cause, and with or without notice."; and

3.  "I have read these policies and understand these policies and **I agree** to abide by and adhere to these policies."

*APP 186*; *APP 187* (emphasis added).

Plaintiffs themselves expressly agreed that the Erath County Employee Handbook is not a contract of employment and did not alter their at-will employment.  *Federal Express Corp. v. Dutschmann*, 846 S.W.2d at 283; *W.T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 520, 19 S.W.2d 27, 30 (Tex. 1929) ("A court should not override by implication the intention of the parties expressed in a binding writing.")  As a matter of law, nothing in the Erath County Employee Handbook created a protected interest in Plaintiffs' continued employment with Erath County.  To the contrary, it expressly precludes any such protected interest.  *See Moulton v. Beaumont*, 991 F.2d 227.  Thus, the Erath County Employee Handbook is dispositive of Plaintiffs' substantive due process claims.

In addition, Plaintiffs have now sworn that they have surrendered their Texas peace officer licenses.  *Plaintiffs APP 006, 0011*.  Texas law confirms that no one may be employed as a peace officer in Texas without a Texas peace officer license.  Tex. Occ. Code § 1701.301.  Thus,

Plaintiffs' own affidavits further negate any claimed property interest or right in continued employment as deputies with the Erath County Sheriff's Office. The summary judgment evidence conclusively establishes that Plaintiffs did not have any protected status as employees of the Erath County Sheriff's Department and Plaintiffs have not adduced any evidence to the contrary.

Plaintiffs seek to sidestep this fatal flaw by returning to their claim that Defendants stigmatized them. This effort is also doomed. Plaintiffs first argue that their discharge "gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." Doc 49 at 21. As discussed above, the Fifth Circuit employs a seven-element stigma-plus-infringement test to determine whether § 1983 allows a government employee a remedy for deprivation of liberty without notice or the opportunity for a name-clearing hearing. *Bellard v. Gautreaux*, 975 F.3d 454, 461-62 (5th Cir. 2012). And, as demonstrated above, the summary judgment evidence shows that Plaintiffs cannot satisfy that test.

- No stigmatizing charges were made against Plaintiffs in connection with the discharge (Element 2);

- No stigmatizing charges against Plaintiffs were false (Element 3); and

- No false, stigmatizing charges against Plaintiffs were made public. ( Element 5).

Defendants are entitled to summary judgment on Plaintiffs' procedural due process claims.

Plaintiffs also claim that "the stigma attached to Plaintiffs will likely prevent them from working in law enforcement again." *Doc 49* at 21. There is no right under Texas law to be a peace officer and no constitutional liberty interest in being employed as such. Plaintiffs identify no cases to the contrary. Further, there is no constitutional liberty interest in the "likelihood" of working in any specific profession, much less one as highly regulated as being a law enforcement officer. Again, Plaintiffs identify no cases to the contrary. And, of course, the hiring history of the Erath County Sheriff's Office—both during and after Plaintiffs were the chief deputy and captain there—

confirm that individuals with a prior general discharge from a law enforcement job can be—and are—hired as deputies.

It is also important to remember that Plaintiffs have surrendered their Texas peace officer licenses. *Plaintiffs APP 006, 0011.* Texas law confirms that no one may be employed as a peace officer in Texas without a Texas peace officer license. TEX. OCC. CODE § 1701.301. Thus, Plaintiffs themselves have affirmatively taken steps to ensure that they cannot legally be employed as Texas peace officers. Plaintiffs cannot possibly have a protected liberty interest in a job that requires a license they voluntarily surrendered and do not have. Defendants are entitled to summary judgment on Plaintiffs' substantive due process claims.

## V.     Plaintiffs Were Not Deprived of any Due Course of Law Rights

The parties are in agreement that Texas generally construes the due-course-of-law provision of Article I, Section 19 consistently with the due process provision of the United States Constitution: *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004); *Lindquist v. City of Pasadena*, 669 F.3d 225, 238 (5th Cir. 2012). Given the identity of relevant protections under Texas's due-course-of-law clause and the federal due process clause, Defendants are entitled to summary judgment on Plaintiffs' due-course-of-law claims for the same reasons that Defendants are entitled to summary judgment on Plaintiffs' due process claims.

## VI.     Matt Coates is Entitled to Qualified Immunity

As Plaintiffs concede, Mr. Coates is protected from liability if he acted reasonably. As addressed above, Plaintiffs' claims against Mr. Coates fail as a matter of law, thereby vindicating the reasonableness of his actions. Mr. Coates is entitled to qualified immunity and Plaintiffs' claims against Erath County likewise fail as a matter of law.

## VII.    Conclusion

The summary judgment evidence in this case is conclusive.  That evidence disproves one or more elements of each of Plaintiffs' claims and Plaintiffs are unable to adduce more than a scintilla of contradictory summary judgment evidence.  Therefore, summary judgment should be granted for Defendants on all of Plaintiffs' claims.  Defendants respectfully pray that this Court grant summary judgment in their favor on each of Plaintiffs' claims, and for such other and further relief to which they may be entitled.

Respectfully submitted,


By:      */s/ James W. Hryekewicz*
          GRANT D. BLAIES
          State Bar No. 00783669
          E-mail: grantblaies@bhilaw.com

          JAMES W. HRYEKEWICZ
          State Bar No. 00784298
          E-mail: jhryekewicz@bhilaw.com

          **BLAIES & HIGHTOWER, L.L.P.**
          420 Throckmorton Street, Suite 1200
          Fort Worth, Texas 76102
          817-334-0800 (Telephone)
          817-334-0574 (Facsimile)

          ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2019, a true and correct copy of the foregoing Reply in Support of Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment was served on the below-listed counsel by way of the Court's Electronic Case Filing system ("ECF").

Frank Hill
HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas 76013
E-mail: fhill@hillgilstrap.com

*/s/ James W. Hryekewicz*
James W. Hryekewicz